NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianlee.com
PATTY W. CHEN, SBN 322992
patty.chen@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:   (213) 622-9100
Facsimile:    (800) 622-9145

MARISA D. POULOS (SBN 197904)
marisa.poulos@amerisbank.com
**AMERIS BANK**
575 Anton Boulevard, Suite 1080
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL,<br><br>Plaintiff,<br><br>vs.<br><br>BLUEWATER YACHTING SOLUTIONS, INC., a Florida corporation,<br><br>Defendant. | Case No. 8:25-cv-01408-FLA(JDEx)<br><br>[Assigned to the Hon. Fernando L. Aenlle-Rocha]<br><br>**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT BLUEWATER YACHTING SOLUTIONS, INC.**<br><br>Complaint Filed:   June 30, 2025<br>Trial Date:         None |

Salisian|Lee LLP

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 24, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6B of the First Street U.S. Courthouse, located at 350 W 1st Street, Los Angeles, CA 90012-4565, the Honorable Fernando L. Aenlle-Rocha presiding, plaintiff Ameris Bank d/b/a Balboa Capital ("Balboa" or "Plaintiff") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against defendant Bluewater Yachting Solutions, Inc., a Florida corporation ("Bluewater" or "Defendant"), for judgment in the amount of **$116,320.55**.

PLEASE TAKE FURTHER NOTICE that Plaintiff seek a default judgment against Defendants Titan in the total amount of $116,320.55 as Plaintiffs have established (a) a sum certain due and owing by Defendant to Plaintiff pursuant to the Equipment Financing Agreement entered into by Defendant and Plaintiff; (b) that Defendant is not in military service and is neither a minor or incompetent person; and (c) costs and attorneys' fees are properly awardable.

//

//

//

//

//

//

//

//

//

//

//

//

2

1    PLEASE TAKE FURTHER NOTICE that this motion is based on this

2  Notice of Motion, the supporting Memorandum of Points and Authorities, the

3  supporting declarations of Jared T. Densen and Don Ngo, and the exhibits attached

4  thereto, the pleadings and papers filed in this action, and upon such further briefing,

5  authorities, and argument submitted to the Court prior to, or during, the hearing on

6  this matter.

7

8  DATED: September 25, 2025          SALISIAN | LEE LLP

9

10                                   By: _____

11                                       Jared T. Densen
                                         Neal S. Salisian
12                                       Patty W. Chen

13
                                     Attorneys for Plaintiff
14                                   AMERIS BANK d/b/a BALBOA CAPITAL

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01408-FLA(JDEx)

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELEVANT FACTS ..............................................1

      a.    The Equipment Financing Agreement. ....................................1

      b.    Attorneys' Fees and Costs.....................................................2

      d.    Default Judgment Motion ......................................................3

II.   LEGAL ARGUMENT ...........................................................................4

      A.    Plaintiff Will Be Highly Prejudiced If Its Default
            Judgment Motion Is Denied.....................................................5

      B.    Plaintiff Has A High Likelihood Of Success On The
            Merits Of Its Substantive Claims And Its Complaint Is
            Sufficiently Pled......................................................................6

      C.    The Sum Of Money At Stake Favors An Entry Of A
            Default Judgment Against Defendants. ...............................88

      D.    There Are No Material Facts That Are Reasonably In Dispute. .........10

      E.    Defendants' Defaults Are Not The Result Of Excusable Neglect.....111

      F.    Policy Concerns Favor Default Judgment In This Matter..................13

      G.    Plaintiff Has Proven Its Damages......................................1414

III.  CONCLUSION .................................................................................15

1

# <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

4

*Acoustics, Inc. v. Trepte Constr. Co.*,
   14 Cal.App.3d 887, 916 (1971)..............................................................................7

5

6

*Draper v. Coombs*,
   792 F.2d 915, 924 (9th Cir. 1986)........................................................................11

7

8

*Educational Serv., Inc. v. Maryland State Board for Higher Education*,
   710 F.2d 170, 176 (4th Cir. 1983).......................................................................12

9

10

*Eitel v. McCool*,
   782 F.2d 1470, 1471-72 (9th Cir. 1986). ........................................ 3, 4, 7, 8, 9, 11

11

12

*Geddes v. United Fin. Group*,
   559 F.2d 557, 560 (9th Cir. 1977)......................................................................6, 10

13

*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
   725 F.Supp.2d 916, 921 (C.D. Cal. 2010) ...........................................................10

14

15

*McKnight v. Webster*,
   499 F.Supp. 420, 424 (E.D. PA 1980) .................................................................12

16

17

*NewGen, LLC v. Safe Cig, LLC*,
   804 F.3d 606, 616 (9th Cir. 2016)..................................................................11, 13

18

19

*O'Connor v. State of Nevada*,
   27 F.3d 357, 364 (9th Cir. 1994).........................................................................11

20

21

*Pena v. Seguros La Comercia, S.A.*,
   770 F.2d 811, 814 (9th Cir. 1985)........................................................................13

22

23

*Penpower Tech, Ltd. v. S.P.C. Tech.*,
   627 F. Supp. 2d 1083 (N.D. Cal. 2008) .............................................................9, 13

24

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). ...............................................5, 6, 7

25

26

*Reichert v. Gen. Ins. Co.*,
   68 Cal.2d 822, 830 (1968).....................................................................................7

27

28

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
   194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) ........................................................12

2

*Walters v. Statewide Concrete Barrier, Inc.*,
    No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006)...........8

**STATUTES**

Code of Civil Procedure § 1620 ...................................................................7

Code of Civil Procedure § 3300 ...................................................................7

Fed. R. Civ. P. 55.........................................................................................4

**OTHER AUTHORITIES**

RESTATEMENT 2d. CONTRACTS § 235(2).........................................................7

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01408-FLA(JDEx)

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **INTRODUCTION AND RELEVANT FACTS**

Plaintiff Ameris Bank d/b/a Balboa Capital ("Balboa" or "Plaintiff") submits the instant Motion for Default Judgment against defendant Bluewater Yachting Solutions, Inc., a Florida corporation ("Bluewater" or "Defendant").

    a.    **The Equipment Financing Agreement.**

This action involves a claim for damages by Plaintiff against Defendant for breach of the written Equipment Financing Agreement No. 451014-000 (the "EFA"). [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, <u>Exh. A</u>.]

Specifically, Plaintiff, on the one hand, and Defendant, on the other, entered into the EFA on or about May 5, 2023. [*See id.*] Under the terms of the EFA, Plaintiff loaned to Defendant the sum of $189,802.16, in order to finance equipment for their business (the "Collateral"). [*See id.*]

Under the EFA, Defendant was required to make forty-eight (48) monthly payments of $4,655.63, beginning on May 9, 2023. [*See id.*, ¶4, <u>Exh. A</u>.] The last payment received by Plaintiff was credited toward the payment due for April 9, 2025. [*See id.*, <u>Exh. B</u>.] Therefore, on or about May 9, 2025, Defendant breached the EFA by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id.*]

At the time of Defendant's default, there remained twenty-four (24) monthly payments, for a total of $111,735.12, due to Plaintiff. [*See id.*, ¶5, <u>Exh. B</u>.]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …" [*See id.*, ¶6, <u>Exh. A</u>.] Balboa's calculation of the 3% discount is made pursuant to a present-value ("PV") accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure. [*See id.*]

For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more.  [*See* Ngo Decl., ¶6, Exh. A.]  Based upon this formula, Balboa calculated that the PV amount due totaled $99,786.00 ("PV'd Total").  [*See id*.]

In addition to the PV'd Total, between the date of default and the initiation of this action, Defendants owed two (2) past due monthly payments for May 9, 2025 and June 9, 2025 in a total amount of $9,311.26, which was not discounted by the PV calculation in accordance with the explicit terms of the EFA.  [*See id*., ¶7, Exh. B.]  Accordingly, there became due the sum of $109,097.26.  [*See id*.]  These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by Defendants.  [*See id*.]

Following Defendant's default, Defendant made one additional monthly payment for May 9, 2025 in the amount of $4,655.63, which Balboa credited to Defendant's account.  [*See id*., ¶8, Exh. B.]  Thus, **$104,441.63** remains owed to Balboa.  Defendant has since failed to make further payments.  [*See id*.]

In addition, based on the amount due of $104,441.63, Plaintiff is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, May 9, 2025, the date of breach, to October 24, 2025, the date noticed for the hearing of this Motion for Default Judgment ("Default Motion"), for a total interest amount of **$4,835.09**, accruing at a rate of **$28.61 per day**, until the entry of judgment.  [*See id*., ¶9; *see also* Declaration of Jared T. Densen ("Densen Decl."), ¶¶5-6.]

**b.    Attorneys' Fees and Costs**

Pursuant to the "Default and Remedies" section on Page 3 of the EFA, Plaintiff is entitled to recover its attorneys' fees and costs from Defendant.  [*See* Densen Decl., ¶7.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$5,688.83** on the EFA.  [*See id*.]  Balboa has indeed incurred

**$1,355.00**, in recoverable costs - $405.00 for filing of the Complaint, $950.00 for service upon Defendant.  [*See* Densen Decl., Exh. E.]

### c.    Default Judgment Motion

Plaintiff's Default Motion satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Plaintiff filed its Complaint and case-initiating documents on June 30, 2025.  [*See* Dkts. 1-4.]  Defendant was properly served on August 26, 2025, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkt. 10.]  On September 19, 2025, Balboa filed its Request for Clerk to Enter Default against Defendant (the "Default Entry Request"), and the Clerk entered default against Defendant on September 22, 2025.  [*See* Dkts. 11-12.]

Defendant is a Florida corporation and is not a minor, incompetent person, or a person in military service or otherwise exempted from default judgment under the Servicemembers Civil Relief Act of 1940 (the "SCRA").  [*See* Densen Decl., ¶4.]

Moreover, this Court has subject matter jurisdiction over the instant action.  The amount in controversy, as alleged in the Complaint and as set forth herein, exceeds $75,000.  [*See* Dkt. 1; *see also id*., ¶8.]  Plaintiff was and still operates as a California corporation, with its principal place of business in Orange County, California.  [*See id*.; *see also id*.]  Plaintiff is also now a wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris Bank, a Georgia state-chartered banking corporation, and accordingly, Plaintiff is a citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank.  [*See id*.]

Defendant is a Florida corporation, incorporated in Florida, with its principal place of business in Sarasota, Florida.  [*See id*., Exh. D.]  Thus, Defendant is a citizen of the State of Florida.  [*See id*.]  As such, there exists complete diversity amongst the Plaintiff and Defendant.  [*See id*., ¶10.]

As set forth below, a default judgment should be entered against the Defendant since Plaintiff satisfies all seven factors under *Eitel*.  Moreover, Plaintiff

has adequately proven its damages.  Thus, Plaintiff respectfully requests that this Court grant its request for a default judgment against Defendant in the amount of **$116,320.55.**

## II.    LEGAL ARGUMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's application after an entry of default.  *See* Fed. R. Civ. P. 55.  Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment.  Plaintiffs Motion has satisfied such requirements.

Here, Plaintiff filed its Complaint and case-initiating documents on June 30, 2025.  [*See* Dkts. 1-4.]  Defendant was properly served on August 26, 2025, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkt. 10.]  On September 19, 2025, Balboa filed its Default Entry Request against Defendant, and the Clerk entered default against Defendant on September 22, 2025.  [*See* Dkts. 11-12.]

Defendant is a Florida corporation and is not a minor, incompetent person, or a person in military service or otherwise exempted from default judgment under the SCRA.  [*See* Densen Decl., ¶4.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  A plaintiff need not prove that all seven factors weigh in its favor, as courts *may* consider these factors in their discretion on whether to enter a default judgment.  *See id*.

Here, the underlying facts in this action show that all seven of the *Eitel* factors weigh in Plaintiff's favor, and thus, supports the entry of default judgment.

A. **Plaintiff's Will Be Highly Prejudiced If Its Default Judgment Motion Is Denied.**

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment application be denied qualifies as prejudice.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Plaintiff has submitted its Motion for Default Judgment as a last resort due to Defendant's deliberate unwillingness to accept responsibility for its actions or even acknowledge Plaintiff's allegations.

The fact remains that Plaintiff, pursuant to the EFA, financed the Collateral for Defendant, with Defendant agreeing to make forty-eight (48) monthly payments of $4,655.63, for which twenty-four (24) monthly payments, for a total of $111,735.12, still remained due to Plaintiff at the time of Defendant's default.  [*See* Ngo Decl., ¶¶3-5, Exhs. A-B.]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …" [*See id*., ¶6, Exh. A.]  Balboa's calculation of the 3% discount is made pursuant to a PV accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure.  [*See id*.]  For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more.  [*See* Ngo Decl., ¶6, Exh. A.]  Based upon this formula, Balboa calculated that the PV'd Total due was $99,786.00.  [*See id*.]

In addition to the PV'd Total, between the date of default and the initiation of this action, Defendants owed two (2) past due monthly payments for May 9, 2025 and June 9, 2025 in a total amount of $9,311.26, which was not discounted by the PV calculation in accordance with the explicit terms of the EFA.  [*See id*., ¶7, Exh.

B.]  Accordingly, there became due the sum of $109,097.26.  [*See* Ngo Decl., ¶7.] These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by Defendants.  [*See id*.]

Following Defendant's default, Defendant made one additional monthly payment for May 9, 2025 in the amount of $4,655.63, which Balboa credited to Defendant's account.  [*See id*., ¶8, Exh. B.]  Thus, **$104,441.63** remains owed to Balboa.  Defendant has since failed to make further payments.  [*See id*.]

Plaintiff has made demands for its monies from Defendant, all of which Defendant has failed to pay back.  [*See id*., ¶10.]

Plaintiff filed its Complaint in this action to recover the monies owed on it, but Defendant has been unwilling to participate in, or otherwise acknowledge, the litigation.  Plaintiff's Motion for Default Judgment is its final option for an attempt at recovery, and without the Court granting the default judgment, Plaintiff will be prejudiced and be denied its right to a judicial resolution of its presented claims. *See PepsiCo*, 238 F. Supp. 2d at 1177.

Moreover, if Plaintiff's Motion for Default Judgment is denied, it will suffer a significant loss due to no fault of its own, and Defendant will obtain a significant windfall of over $116,320.55.  Not only will the deliberate nonaction by Defendant and their continued stalling techniques be unjustly rewarded, but Plaintiff will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Plaintiff will be substantially prejudiced, especially with no other available recourse, should its Motion for Default Judgment be denied, and thus, further supports the Default Judgment against Defendant to be granted by this Court.

**B.**   **Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01408-FLA(JDEx)

*Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together.  *See PepsiCo*, 238 F. Supp. 2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the defendant, and (4) resulting damages proximately caused by the defendant's breach of contract.  *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met.  Specifically, Plaintiff, on the one hand, and Defendant, on the other, entered into the EFA on or about May 5, 2023.  [*See* Ngo Decl., ¶3, Exh. A.]  Under the terms of the EFA, Plaintiff loaned to Defendant the sum of $189,802.16, in order to finance the Collateral for its business.  [*See id.*]

Under the EFA, Defendant was required to make forty-eight (48) monthly payments of $4,655.63, beginning on May 9, 2023.  [*See* Ngo Decl., ¶4, Exh. A.] The last payment received by Plaintiff was credited toward the payment due for April 9, 2025.  [*See id.*, Exh. B.]  Therefore, on May 9, 2025, Defendant breached the EFA, by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id.*]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …"  [*See id.*, ¶6, Exh. A.]  Balboa's calculation of the 3% discount is made pursuant to a PV accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure.  [*See id.*]  For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be

discounted by more.  [*See* Ngo Decl., ¶6, <u>Exh. A</u>.]  Based upon this formula, Balboa calculated that the PV'd Total due was $99,786.00.  [*See id*.]

In addition to the PV'd Total, between the date of default and the initiation of this action, Defendants owed two (2) past due monthly payments for May 9, 2025 and June 9, 2025 in a total amount of $9,311.26, which was not discounted by the PV calculation in accordance with the explicit terms of the EFA.  [*See id*., ¶7, <u>Exh. B</u>.]  Accordingly, there became due the sum of $109,097.26.  [*See* Ngo Decl., ¶7.] These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by Defendants.  [*See id*.]

Following Defendant's default, Defendant made one additional monthly payment for May 9, 2025 in the amount of $4,655.63, which Balboa credited to Defendant's account.  [*See id*., ¶8, <u>Exh. B</u>.]  Thus, **$104,441.63** remains owed to Balboa.  Defendant has since failed to make further payments.  [*See id*.]

There is no doubt, and it cannot be disputed that: (1) Plaintiff and Defendant entered into the EFA; (2) Defendant received the loan in order to finance the Collateral for its business; (3) Defendant ceased making payments pursuant to the EFA; and (4) Plaintiff has suffered and continues to suffer damages due to Defendant continued nonpayment under the EFA.  Thus, Plaintiff has a substantially high likelihood in succeeding on the merits of its claims.  In fact, no known defenses exist to any of the material facts.

## C.    <u>The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendants.</u>

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment.  *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts).  This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct.  *See Walters v. Statewide Concrete Barrier, Inc.*,

No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Plaintiff seeks compensatory damages pursuant to the EFA in the amount of **$104,441.63**; prejudgment interest from May 9, 2025, the date of breach, to October 24, 2025, the date noticed for the hearing of this Default Motion, in the amount of **$4,835.09**, plus **$28.61 per day** until the entry of judgment; statutory attorneys' fees, in the amount of **$5,688.83**; and costs in the amount of **$1,355.00**. [*See* Densen Decl., ¶¶5-7, Exh. C.]  The damages sought are contractually-based and arise out of the clear terms and obligations of the EFA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*, ¶7.]

As such, the sum of money sought is reasonable and far from speculative.  It is also substantially less than the $3 million sought in *Eitel*, in which this sum, and other factors, weighed in the favor of denying default judgment.  And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01408-FLA(JDEx)

**D.     There Are No Material Facts That Are Reasonably In Dispute.**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.

Here, specifically, Plaintiff, on the one hand, and Defendant, on the other, entered into the EFA on or about May 5, 2023.  [*See* Ngo Decl., ¶3, Exh. A.] Under the terms of the EFA, Plaintiff loaned to Defendant the sum of $189,802.16, in order to finance the Collateral for its business.  [*See id*.]

Under the EFA, Defendant was required to make forty-eight (48) monthly payments of $4,655.63, beginning on May 9, 2023.  [*See id*., ¶4, Exh. A.]  The last payment received by Plaintiff was credited toward the payment due for April 9, 2025.  [*See id*., Exh. B.]  Therefore, on May 9, 2025, Defendant breached the EFA, by failing to make the monthly payment due on that date, and thus, has remained continuously in default.  [*See id*.]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …" [*See id*., ¶6, Exh. A.]  Balboa's calculation of the 3% discount is made pursuant to a PV accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure.  [*See id*.]  For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be

1  discounted by more.  [*See* Ngo Decl., ¶6, <u>Exh. A</u>.]  Based upon this formula,
2  Balboa calculated that the PV'd Total due was $99,786.00.  [*See id.*]

3      In addition to the PV'd Total, between the date of default and the initiation of
4  this action, Defendants owed two (2) past due monthly payments for May 9, 2025
5  and June 9, 2025 in a total amount of $9,311.26, which was not discounted by the
6  PV calculation in accordance with the explicit terms of the EFA.  [*See id.*, ¶7, <u>Exh.</u>
7  <u>B</u>.]  Accordingly, there became due the sum of $109,097.26.  [*See id.*, ¶7.]  These
8  amounts are exclusive of interest, attorneys' fees and costs, no portion of which
9  sum has been paid by Defendants.  [*See id.*]

10      Following Defendant's default, Defendant made one additional monthly
11  payment for May 9, 2025 in the amount of $4,655.63, which Balboa credited to
12  Defendant's account.  [*See id.*, ¶8, <u>Exh. B</u>.]  Thus, **$104,441.63** remains owed to
13  Balboa.  Defendant has since failed to make further payments.  [*See id.*]

14      Defendant cannot dispute any of the facts in any way or make any reasonable
15  arguments surrounding any of the material facts in this action.  If anything,
16  Defendant's refusal to participate in, or even acknowledge the litigation, is evidence
17  that no such defense exists.

18      **E.**    <u>**Defendant's Default Is Not The Result Of Excusable Neglect.**</u>

19      Excusable neglect is not found where a defendant who was properly served
20  simply ignored the deadline to respond.  *See NewGen, LLC v. Safe Cig, LLC*, 804
21  F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's
22  counsel after default had been entered did not constitute to "excusable neglect").  In
23  fact, courts have required some showing of good faith by the defaulted defendant to
24  constitute "excusable neglect."  *See Eitel*, 782 F.2d at 1471-72 (defendant's failure
25  to answer was held to be excusable neglect in light of ongoing settlement
26  negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding
27  excusable neglect where defendant filed an answer past the deadline and on the
28  same day that the motion for default judgment was filed); *O'Connor v. State of*

*Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where defendant has good faith of a timely answer); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where defendant had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F.Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where defendant sought an extension of time to respond, but a default judgment was sought in the interim).

Where the defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendant failed to make any showing whatsoever that their unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect. Defendant Bluewater was properly served by personally leaving the Complaint and Summons with John T. Allen, as the registered agent for service and CEO of defendant Bluewater, at 4437 Greenfield Avenue, Sarasota, Florida 34237. [*See* Dkt. 10.]

Further, Defendant was additionally served at the same addresses thereafter with the Default Entry Request. [*See* Dkt. 11.] Defendant has not yet made any appearance in the action, and thus, have not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to participate in the litigation to address and defend the allegations set forth against the defendant. Declining to respond to a complaint after proper service (even in the case where defendant's counsel contacts plaintiff's counsel after the entry of

12

default), does not warrant a finding of excusable neglect. *See NewGen*, 804 F.3d at 616.

Here, Defendant has failed to acknowledge their wrongdoings and the allegations they face, even in the slightest degree. Instead, Defendant has blatantly ignored Plaintiff's Complaint and all other papers filed thereafter. Rather, Defendant's course of action in response to Plaintiff's Complaint, or the apparent lack thereof, is intentional, and thus, would not constitute excusable neglect.

### F.    Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*. *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added). The policy preference to decide a case on its merits is not dispositive, and thus, does not preclude a court from granting a default judgment. *See Penpower Tech, Ltd.*, 627 F. Supp. 2d at 1093 (defendants' failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Plaintiff to grant Plaintiff's request for a default judgment. As detailed in II.E., *supra*, Defendant has made it abundantly clear that they will not participate in this litigation, or even acknowledge the instant action. Defendant has deliberately chosen a course of action to simply ignore Plaintiff and its claims against them, including their own liability. Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendant's refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendant for their unwillingness to account for their liability to Plaintiff, and the extremely prejudicial windfall they would receive should their deliberate silence and stalling techniques be rewarded, at Plaintiff's expense. *See* Section II.A., *supra*.

13

### G.     __Plaintiff Has Proven Its Damages.__

Under the EFA, Defendant was required to make forty-eight (48) monthly payments of $4,655.63, beginning on May 9, 2023. [*See* Ngo Decl., ¶4, <u>Exh. A</u>.] The last payment received by Plaintiff was credited toward the payment due for April 9, 2025. [*See id*., <u>Exh. B</u>.] Therefore, on May 9, 2025, Defendant breached the EFA, by failing to make the monthly payment due on that date, and thus, has remained continuously in default. [*See id*.]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …" [*See id*., ¶6, <u>Exh. A</u>.] Balboa's calculation of the 3% discount is made pursuant to a PV accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would be in today's dollar figure. [*See id*.] For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more. [*See id*., ¶6, <u>Exh. A</u>.] Based upon this formula, Balboa calculated that the PV'd Total due was $99,786.00. [*See id*.]

In addition to the PV'd Total, between the date of default and the initiation of this action, Defendants owed two (2) past due monthly payments for May 9, 2025 and June 9, 2025 in a total amount of $9,311.26, which was not discounted by the PV calculation in accordance with the explicit terms of the EFA. [*See id*., ¶7, <u>Exh. B</u>.] Accordingly, there became due the sum of $109,097.26. [*See id*., ¶7.] These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by Defendants. [*See id*.]

Following Defendant's default, Defendant made one additional monthly payment for May 9, 2025 in the amount of $4,655.63, which Balboa credited to

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01408-FLA(JDEx)

Defendant's account.  [*See* Ngo Decl., ¶8, Exh. B.]  Thus, **$104,441.63** remains owed to Balboa.  Defendant has since failed to make further payments.  [*See id.*]

In addition, based on the amount due of $104,441.63, Plaintiff is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from May 9, 2025, the date of breach, to October 24, 2025, the date noticed for the hearing of this Default Motion, for a total interest amount of **$4,835.09**, accruing at a rate of **$28.61 per day**, until the entry of judgment.  [*See id.*, ¶7; *see also* Densen Decl., ¶¶5-6.]

Pursuant to the "Default and Remedies" section on page 3 of the EFA, Plaintiff is entitled to recover its attorneys' fees and costs from Defendant.  [*See* Densen Decl., ¶7, Exh. C.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$5,688.83**.  [*See id.*]  Plaintiff has indeed incurred **$1,355.00**, in recoverable costs - $405.00 for filing of the Complaint, and $950.00 for the service of process fees for Defendant.  [*See id.*, Exh. C.]

Altogether, this totals out (as of October 24, 2025), calculated as follows:

<u>The EFA</u>

|   |   |   |
|---|---|---|
| - | Amount owed: | $104,441.63 |
| - | Prejudgment Interest: | $    4,835.09 |
| - | Attorneys' Fees: | $    5,688.83 |
| - | <u>Costs:</u> | <u>$    1,355.00</u> |
| - | Total: | **$116,320.55** |

//
//
//
//
//
//
//

15

III.   **CONCLUSION**

Based on Plaintiffs' Complaint, Default Judgment Motion, and all supporting papers, Plaintiffs respectfully request that the Court grant its Default Judgment Motion against Defendant in the amount of **$116,320.55**.

DATE: September 25, 2025          SALISIAN | LEE LLP

By: _____
    Jared T. Densen
    Neal S. Salisian
    Patty W. Chen

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL